UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JONI G. GRAFF, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-143 |
| | § | |
| NEWREZ, LLC dba SHELLPOINT | § | With Jury Demand Endorsed |
| MORTGAGE SERVICING, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Joni G. Graff ("Plaintiff"), by and through counsel, for her Complaint against Defendant NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint" or "Defendant"), states as follows:

### I. INTRODUCTION

1.      Defendant engaged in willful, malicious, coercive, deceptive and harassing actions against Plaintiff in furtherance of Defendant's efforts to illegally collect from Plaintiff, *in personam*, monies she did not owe.  On the date Plaintiff filed her bankruptcy, she resided in a 2000 Silvercreek Manufactured Home in Nevada, Texas.  In Plaintiff's confirmed Chapter 13 Plan, her home was to be retained, the secured portion of the debt paid through the plan with any unsecured portion to be discharged upon completion of the Plan.  Plaintiff completed her Chapter 13 Plan and received a discharge.

2.      During the Chapter 13 proceeding, Defendant acquired the servicing rights to the debt and collateral home.  After Plaintiff completed her Chapter 13 Plan and Defendant had been paid all it was entitled to get, it nevertheless took actions to collect additional sums from Plaintiff,

*in personam*, by 1) verbally representing to her that she still owed over $20,000, 2) making similar false, derogatory and defamatory representations to TransUnion, Equifax and Experian credit bureaus to be reported on Plaintiff's credit reports, and 3) refusing to transfer title to the manufactured home to Plaintiff after the completion of her Chapter 13 Plan and the debt satisfied.

3.      Plaintiff claims Defendant violated: 1) Tex. Fin. Code § 392.001 *et seq.*, known as the Texas Debt Collection Act ("TDCA"); 2) 15 U.S.C. § 1692 *et seq.*, known as the Fair Debt Collection Practices Act ("FDCPA"); and 3) the discharge injunction of the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division; and defamed Plaintiff and seeks to recover from Defendant actual, statutory, and punitive damages, and legal fees and expenses.

## II. Parties

4.      Plaintiff is a natural person residing in Collin County, Texas, and she is a "consumer," as defined by the TDCA, Tex. Fin. Code § 392.001(1); and the FDCPA, 15 U.S. Code § 1692a(3).

5.      Defendant is a foreign limited liability company that may be served by delivering a summons to its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

6.      Defendant is a "creditor," "debt collector," and/or "third-party debt collector" under the TDCA, Tex. Fin. Code §§ 392.001(3), (6) and (7), and the FDCPA, 15 U.S. Code § 1692a(6).

7.      7.      The debt Defendant was attempting to collect from Plaintiff was a "consumer debt" or "debt," as said terms are defined by Tex. Fin. Code § 392.001(2) and the FDCPA, 15 U.S.C. § 1692a(5).

8.      Defendant is a furnisher of consumer credit information to national consumer reporting agencies Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian

Information Solutions, LLC ("Experian") (collectively the "CRAs"), as defined by 12 CFR 1022.41(c) and as described throughout the Fair Credit Reporting Act ("FCRA"), as Defendant regularly reports consumer account information to the CRAs for inclusion in consumer credit reports.

### III. JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334, and 1367; and 15 U.S.C. §§ 1692, *et seq*.

10.      Venue is proper in this district because Defendant transacts business in this district, Plaintiff filed her subject bankruptcy case in this district and the conduct complained of occurred in this district.

### IV. FACTUAL ALLEGATIONS

**A.      The Subject Debt Was Satisfied by Plaintiff's Completion of her Chapter 13 Plan and the Bankruptcy Discharge.**

11.      On July 17, 2015, Plaintiff filed for protection under Chapter 13 of the U.S. Bankruptcy Code in case number 15-41282 ("Bankruptcy Case") filed in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Bankruptcy Court").

12.      Prior to Plaintiff filing her Bankruptcy Case, Green Tree Servicing, LLC ("Green Tree") was the servicer on Plaintiff's manufactured home loan account number xxxxxx3284 (the "Loan" or "Account"), and asserted a claim against Plaintiff in its attempt to collect on the Account for a consumer debt she owed which required her to pay money arising out of transactions of which money, property, insurance, or services, primarily for personal, family, or household purposes, were the subject.

13.      On Schedule D filed with Plaintiff's bankruptcy petition, "**Schedule D: Creditors Who Have Claims Secured by Property**," Plaintiff listed the Account as a secured claim secured

by a 2000 Silvercreek Model 600 Manufactured Home located at 5860 Sheila Lane, Nevada, Texas 75173 (the "Property") and identifying Green Tree as the creditor.

14.     A true and correct copy of relevant portions of Plaintiff's Schedule "D" is attached hereto as Exhibit "A."

15.     On July 17, 2015, Plaintiff filed her Chapter 13 Plan which provided for the payment to Green Tree to be made through the Plan in the amount of $37,225, with interest at 3.75%, with any unpaid unsecured debt to be discharged upon completion of Plaintiff's Chapter 13 Plan.

16.     A true and correct redacted copy of Plaintiff's Chapter 13 Plan is attached hereto as Exhibit "B."

17.     On July 28, 2015, Green Tree filed a proof of claim on the Account in Plaintiff's Bankruptcy Case, claiming Plaintiff owed it the amount of $65,340.18.

18.     A true and correct redacted copy of Green Tree's Proof of Claim is attached hereto as Exhibit "C."

19.     On October 23, 2015, the Bankruptcy Court confirmed Plaintiff's Chapter 13 Plan.

20.     On April 6, 2020, Green Tree transferred the servicing of the Account to Defendant, NewRez LLC d/b/a Shellpoint Mortgage Servicing, with an account number ending in 1978 (also referred to herein as the "Loan" or "Account").

21.     A true and correct redacted copy of the April 6, 2020 Transfer of Claim Other Than for Security filed in Plaintiff's Bankruptcy Case is attached hereto as Exhibit "D."

22.     On September 8, 2020, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order"). The Discharge Order relieved Plaintiff from any personal liability for any unpaid, unsecured debt to Defendant, as well as all other unsecured debts. The Discharge Order expressly prohibits taking any action to collect a discharged debt from Plaintiff. Included

with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "**<u>Creditors cannot collect discharged debts</u>**" and that "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees."

23.    On or about September 10, 2020, the Bankruptcy Noticing Center sent a copy of the Discharge Order to Green Tree and Defendant by electronic transmission, which was not returned and constituted notice of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay with the discharge injunction imposed by 11 U.S.C. §524(a).

24.    A true and correct redacted copy of the Discharge Order is attached hereto as Exhibit "E."

25.    At no time during the pendency of Plaintiff's Bankruptcy Case did Defendant, Green Tree or any other person or entity object to or dispute the details or completeness of the claim on the Account listed on Schedule D of Plaintiff's Petition.

26.    At no time did Plaintiff reaffirm the debt on the Account with Green Tree, Defendant or any person or entity.

27.    At no time did the Bankruptcy Court declare the debt on the Account to be non-dischargeable.

**B.    After the Debt was Satisfied, Plaintiff Continued to Take Actions to Collect Discharged Portions of the Debt.**

28.    After the secured portion of the debt was paid and the unpaid unsecured portion of the debt discharged, Defendant took actions to try and collect the debt from Plaintiff personally.

29.    On or about October 13, 2020, Plaintiff called Shellpoint at telephone #877-491-7277 to find out what she needed to do to get the title to the manufactured home since the Account

had been satisfied by completion of the Chapter 13 Plan.  Plaintiff was told by the Defendant's representative who took the call and a supervisor that the loan hadn't been paid off, that she was behind over $5,000 and owed more than $20,000 on the Account.  When the Plaintiff explained that the debt had been included in her Chapter 13 bankruptcy plan and satisfied, she was informed that Defendant didn't see it that way.  In fact, she was told that Shellpoint had commenced foreclosure proceedings and the only way foreclosure could be avoided would be for her to pay the past due payments on the Loan.

**C.    After the Debt Had Been Satisfied, Defendant Reported False, Inaccurate, and Defamatory Information to the Credit Bureaus.**

30.    On November 30, 2020, Shellpoint misreported to TransUnion that the Account was "120 Days Past Due Date," had a balance of $22,558, monthly payments of $673 per month and a high balance of $69,491 from 10/2020 to 11/2020."

31.    On November 30, 2020, Shellpoint reported to Experian that foreclosure proceedings had started, $1,188 was past due as of November 2020, there was a balance due of $22,558, and $673 monthly payments that were past due since May 2020.

32.    On November 30, 2020, Shellpoint reported the Account to Equifax as "OVER_120_DAYS_PAST_DUE, "Balance: $22,558," "Amount Past Due $1,188," "Scheduled Payment Amount $673," and "Foreclosure process started" and "180 days or more past due."

33.    True and correct redacted copies of relevant excerpts from Plaintiff's TransUnion, Experian and Equifax credit reports are attached hereto as Exhibits "F," "G" and "H."

**D.    After the Debt was Satisfied, Defendant Failed and Refused to Provide Plaintiff with the Original, Unencumbered Title to her Home.**

34.    On or about February 4, 2021, Plaintiff sent Defendant a letter reminding it again that its secured claim had been paid, any unpaid unsecured portion discharged, and requesting it

to send her the original title to the manufactured home.  To this date, the original title has not been delivered to Plaintiff even though the debt has been satisfied.

35.    A true and correct of the February 4, 2021 letter Plaintiff sent Defendant is attached hereto as Exhibit "I."

## V.  GROUNDS FOR RELIEF- COUNT I

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

36.    Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs, as if fully rewritten here.

37.    Defendant has violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

a)    Tex. Fin. Code § 392.301(a)(8) prohibits Defendant from taking an action prohibited by law.  Defendant's false and erroneous reporting to the CRAs violated the FDCPA and Defendant's attempts to collect discharged debt by telling Plaintiff foreclosure proceedings had been started and demanding discharged debt be paid violated the discharge injunction.  These violations, as detailed herein, also violated the TDCA;

b)    Tex. Fin. Code § 392.304(a)(8) prohibits misrepresenting the character, extent, or amount of Plaintiff's debt.  Defendant's inaccurate, incomplete and misleading information regarding the Account which it gave to Plaintiff and furnished the CRAs, all show that Defendant made misrepresentations of the character, extent or amount of the subject debt, in violation of the TDCA; and

c)    Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt.  For the reasons stated in the preceding paragraphs (a and b), Defendant intentionally tried to coerce or deceive Plaintiff into paying the debt, while Defendant knew the Account was discharged in Plaintiff's bankruptcy, rendering the debt legally uncollectible from Plaintiff.

38.    In furtherance of its efforts to illegally and deceptively collect on the Account, Defendant failed to accurately report and update the inaccurate, negative information it had reported to the CRA's on the Account to be reported on Plaintiff's credit reports.  After Plaintiff

received a discharge on the Account in her Bankruptcy Case, Defendant should have furnished accurate information about the status of the Account to the CRAs, that the Account was paid off or discharged in bankruptcy.

39.    Under Tex. Fin. Code Ann. § 392.403, Defendant's actions make it liable for Plaintiff's actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees.  Also, Plaintiff's injuries resulted from Defendant's malice, actual fraud, and/or willful and intentional misconduct, entitling Plaintiff to recover punitive damages.

40.    Because of Defendant's conduct, Plaintiff was forced to hire counsel to pursue this action, and Plaintiff's recoverable damages include her reasonable attorney's fees incurred in prosecuting this claim.

## VI.  GROUNDS FOR RELIEF- COUNT II

### FAIR DEBT COLLECTION PRACTICES ACT

41.    Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if rewritten here in their entirety.

42.    The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. *See* 15 U.S.C. § 1692 *et seq*.  The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights.  *See* 15 U.S.C. § 1692k.  The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

43.    In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action.  The substantive heart of

the FDCPA lies in three broad prohibitions.  First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e.  And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exist a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

44.    In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, the loss of jobs, and to invasions of individual privacy."  15 U.S.C. § 1692a.  Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers.  *See* 15 U.S.C. § 1692b.

45.    Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors.  The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to ensure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692e.

46.    The general prohibition of 15 U.S.C. § 1692e provides that "A debt collector may not use any false, deceptive or misleading misrepresentation or means in connection with the collection of any debt."  The statute goes on to specifically enumerate that one violation is

"[C]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). This section prohibits the actual communication of false credit information as well as the threat to communicate false credit information. Defendant reporting of the debt as a live debt that was owed *in personam* by Plaintiff violates 15 U.S.C. § 1692e(8).

47.     The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of a single violation. *See Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3, (2d Cir. 1993); *see also Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *see also Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

48.     The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor. *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA), 15 U.S.C. §1601 *et seq.*, is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

49.     The FDCPA is to be interpreted in accordance with the "least sophisticated consumer" standard. *See Brown v. Card Serv. Ctr*, 464 F.3d 450, 453 fn1 (3d Cir. 2006); *Graziano v. Harrison,* 950 F.2d 107, 111, fn5 (3rd Cir. 1991). The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and

the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Id*. The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naïve and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices. *See Clomon*, 988 F.2d at 1318.

50.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representations or means in connection with the collection of any debt and sets forth a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. *See* 15 U.S.C. § 1692e(1)-(16).

51.     Defendant's collection actions at issue, described hereinabove, violate 15 U.S.C. §1692e(2)(A) due to Defendant's false representation of the character, amount or legal status of the discharged debt.

52.     Defendant's actions described hereinabove are the manifestations of their practices and policies to ignore the provisions of the Bankruptcy Code applicable to them and illegally collect or attempt to collect pre-petition debts from unsophisticated debtors.

## VII.  GROUNDS FOR RELIEF - COUNT III

### VIOLATION OF THE DISCHARGE INJUNCTION

53.     Plaintiff repeats, re-alleges, and incorporates by reference all of the preceding paragraphs, as if rewritten here in their entirety.

54.     At all material times, Defendant had actual knowledge of Plaintiff's Bankruptcy Case, the completion of her Chapter 13 Plan, and of the discharge of the unsecured portion of the debt on the Account.

-11-

55.     Post-discharge, Defendant attempted to collect from Plaintiff personally on the Account and the discharged portion of the debt, as evidenced by Defendant's inaccurate credit reporting, personal representations made to Plaintiff that she still owed a portion of the debt, that foreclosure proceedings had been commenced and would go forward unless she paid all past due payments, and Defendant's refusal to give her the original unencumbered title to her home.

56.     Defendant's actions were willful acts in furtherance of its efforts to collect the discharged debt from Plaintiff, in violation of the discharge injunction imposed by 11 U.S.C. § 524(a).  Further, Defendant's acts were harassing attempts to coerce and deceive Plaintiff to pay the discharged debt.  Defendant's failure to comply with the aforesaid laws, despite Defendant's being on notice of Plaintiff's Bankruptcy Case and discharge and the effect of Plaintiff's discharge, illustrates Defendant's utter contempt for federal law and the discharge injunction.

57.     The actions of Defendant constitute harassment and coercive and/or deceptive actions taken to collect a discharged debt from Plaintiff, in gross violation of the discharge injunction imposed by 11 U.S.C. § 524(a)(1)-(3).

58.     Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the Bankruptcy Case.  After this *prima facie* showing by Plaintiff, the duty falls on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability.  Failing a showing by Defendant of its present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiff must prevail on her claims, and Defendant must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court.  Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant.  Any allegation of a good faith exception should not be allowed.

59.     Specifically, Defendant violated that part of the Bankruptcy Court's Discharge Order issued pursuant to 11 U.S.C. § 524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived...."

60.     Plaintiff believes that, after reasonable discovery in this case, she will be able to show that Defendant continues to report false, negative information to the CRAs on accounts included and/or discharged in bankruptcy, and it intentionally and knowingly has not corrected its policies of keeping false and damaging information from being reported correctly on these consumers' credit reports, including, but not limited to Plaintiff's credit reports at issue.

61.     There are no exceptions under 11 U.S.C. § 524, other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendant's conduct, which was in blatant disregard of the discharge injunction.

62.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here.  No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

63.     Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court.  Any burdening of Plaintiff with an obligation to police the misconduct of Defendant would be a complete derogation of the law.  It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost of compliance.  Any attempt by Defendant to mount such a defense in this proceeding would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court, which is

prohibited. Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant. No defense of failure to mitigate should be allowed.

64.    Plaintiff has been injured and damaged by Defendant's actions, and Plaintiff is entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendant's violations of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

## VIII. GROUNDS FOR RELIEF – COUNT IV

### DEFAMATION

65.    The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

66.    After the debt had been satisfied, Defendant provided statements of fact to the CRA's regarding Plaintiff, her payment history, and the status of the Account to be published through her credit reports.

67.    Defendant may be held liable for the CRAs republication of the false and defamatory statements because Defendant's actions created a reasonable risk that the defamatory matter would be communication to other parties by the CRAs.

68.    The published statements referred to Plaintiff and were false.

69.    The published statements were defamatory, as the false statements constituted an invasion of the Plaintiff's interests in her reputation and good name.

70.    The publication of such false statements of fact about Plaintiff, her payment history, and the status of the Plaintiff's mortgage loan account was done with actual malice and/or willful intent to injure the Plaintiff.

71.    Actual malice is defined as publishing a statement with knowledge of or reckless disregard for its falsity.

72.    Defendant acted with actual malice and/or willful intent to injure the Plaintiff because it willfully provided for publication of false information regarding Plaintiff, her payment history, and the status of Plaintiff's mortgage loan account with knowledge of the falsity of such information, having been informed of the truth by Plaintiff.

73.    Defendant's publication of the false information regarding Plaintiff, her payment history, and the status of the discharged Account was also done with reckless disregard for the truth, which is demonstrated by Defendant's pattern of ignoring Plaintiff's repeated disputes of such information as set forth above.

74.    Defendant's malice may be inferred from the fact that Defendant continually published false and misleading information regarding Plaintiff, her payment history, and the status of the Account post-discharge to CRAs and by its failure to correct such statements after being specifically informed of the falsity of such information by plaintiff verbally and in writing.

75.    Each time the false statements were presented to a third party, in the form of credit inquiries, a new publication occurred.

76.    Plaintiff has suffered actual damages, including increased costs of credit, increased interest rates, attorney's fees and/or out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Defendant's publication of defamatory statements.

77.    Plaintiff is entitled to actual damages as a result of Defendant's publication of defamatory statements.

## IX. *RESPONDEAT SUPERIOR* AND VICARIOUS LIABILITY

78.     After a reasonable time to conduct discovery in this case, Plaintiff believes she will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of any type for Defendant in the line and scope of such individuals' (or entities') empress or implied authority, through employment, agency, or representation, which imputes liability on Defendant for all actions at issue under a theory of *respondeat superior* and/or vicarious liability.

## X. DAMAGES

79.     In addition to any damages previously stated hereinabove, the conduct at issue of Defendant has proximately caused Plaintiff monetary loss; past and future mental distress; emotional anguish and a discernable injury to Plaintiff's emotional state; harm and damage to Plaintiff's credit score, credit rating and credit reputation and resulting injuries; and other damages, evidence for all of which will be presented to the jury.  Moreover, dealing with the consequences of Defendant's actions has cost Plaintiff time and mental energy, which are precious to her.

80.     At all relevant times, Defendant knew the Account had been satisfied by Plaintiff's completion of her Chapter 13 Plan, and it continues to know, that, pursuant to a discharge order granted by a U.S. Bankruptcy Court, discharged debts are no longer legally collectible, but Defendant made a corporate decision, knowingly, willfully, maliciously, and contrary to its knowledge of bankruptcy law, to attempt to collect on the debt it knew had been discharged as a result of Plaintiff's Bankruptcy Case.

81.     Plaintiff believes that, after reasonable discovery in this case, she will be able to show that all actions taken by, or on behalf of, Defendant were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiff, with the actual knowledge that such actions were in violation of the law.

82.    Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant's actions at issue are an integral part of Defendant's illegal design, implemented in its policies and procedures, to profit by harassing unsophisticated debtors and collecting debts that had been included and discharged in the debtors' respective bankruptcy cases.

83.    Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant has been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendant, intentionally and knowingly, has refused to correct its policies and comply with applicable laws, of which laws Defendant is well aware.

84.    Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts discharged in bankruptcy, including, but not limited to, accessing Plaintiff's credit reports, and reporting misleading information to the CRAs to be included in Plaintiff's credit reports regarding the Account in furtherance of Defendant's collection attempts.  Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant. Moreover, Plaintiff's injuries resulted from Defendant's malice, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

85.    Due to Defendant's conduct, Plaintiff was forced to hire counsel, and her damages include reasonable attorney's fees incurred in prosecuting her claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Joni G. Graff prays the Court:

A.    Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant's violations of the TDCA, the FDCPA, the bankruptcy discharge injunction, and for defamation;

B.    Find that appropriate circumstances exist for an award of punitive damages to Plaintiff and award these damages as sought;

C.    Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.    Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ James J. Manchee*
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF

</div>

## **JURY DEMAND**

Plaintiff hereby demand a trial by jury on all issues so triable.

February 18, 2021                    */s/ James J. Manchee*
Date                                 James J. Manchee